UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA       )
                               )
        v.                     )        CRIMINAL NO. 04-10245-RGS
                               )
ANDREW PERRY                   )

<u>DEFENDANT'S SENTENCING MEMORANDUM</u>

Defendant, Andrew Perry, submits this memorandum to assist the Court in sentencing. For the reasons that follow, defendant submits that a sentence of 63 months imprisonment, with a three year period of supervised release to follow, is reasonable and appropriate pursuant to the factors set forth in 18 U.S.C. § 3553(a).

**ARGUMENT**

The guideline sentencing range calculated by the Probation Department in the Presentence Report is undisputed. After <u>Booker</u>, however, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a) keeping in mind the primary directive that sentencing courts "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." <u>Id.</u> Here, those factors dictate a sentence of 63 months imprisonment.

**1.    The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

**(a) Nature and Circumstances of Offense**

Perry has consistently and repeatedly recognized that his behavior in possessing a firearm in order to threaten the putative victim, Eddy Alcindor, was horribly irresponsible and inexcusable.  Notwithstanding the seriousness of his behavior, it should be noted that Alcindor, himself a man with a substantial criminal history whom Perry sought to dissuade from abusing a long-time friend, suffered no long-lasting effects from the incident at issue and indeed refused to cooperate with authorities concerning the incident.

Finally, the circumstances of the offense should be put in context with Perry's otherwise positive efforts to avoid the fate that too often accompanies life as a young man in an urban housing project.  Age 25 at the time of the incident, he had remained trouble free for a substantial period of time following his release from a house of correction sentence imposed when he was 21 years old.

### (b) Perry's History and Characteristics

Perry is a 27 year-old man who has demonstrated an ability to abide by societal norms and escape life in the urban housing projects.  As the PSR demonstrates, Perry has thrived when provided the minimal structure available by probation - and more recently Pretrial Services - supervision.  When on such supervision, Perry has shown remarkable insight into the difficulties he faces as a young urban male with a criminal

record by seeking and holding employment, usually limited to those offering just minimum wage, eschewing the life of easy money on the streets.  And the insight has, at times, paid off in self-confidence and self-respect: Perry described his work at a downtown office firm as some of the best times of his life in that he felt valued and productive.  Unfortunately, the formidable obstacle of a substantial criminal record has made such opportunities fleeting; he was immediately terminated once the firm discovered that he had prior criminal convictions.

Particularly striking is Perry's behavior while on pretrial release in the instant matter.  His initial release in May 2004 was accompanied by an extremely strict set of conditions, including house arrest on electronic monitoring and virtual banishment from the city of Boston, home to his family and close friends.  Perry nevertheless complied with each condition, eventually earning the privilege of working and taking constrained visits outside of his home.  When eventually allowed to work, Perry excelled and was working long hours in Westborough before disagreements with his longtime companion forced his relocation to Revere.  Perry, through his demonstrated responsibility, has earned the privilege of steadily less supervision by Pretrial Services to the point where he now is required only to report on a weekly basis.  Perry has continued

working at temporary employment and has experienced no new legal difficulties in the over two years he has been released.

Given the positive prognostic signs of the willingness and ability to seek and maintain employment and thus to remain trouble-free, a sentence of 63 months is sufficient but not greater than necessary to effectuate the sentencing goals of 18 U.S.C. § 3553(a).

**2.    The Need for the Sentence Imposed to Promote Certain Statutory Objectives:**

    **(A)    to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

The offense conduct here is serious and merits significant punishment.  63 months in prison - substantially more than Perry would have received had he been prosecuted in the state system - is significant punishment and far better reflects the seriousness of defendant's conduct than does the 84-108 month guideline sentence range given the offense at issue and Perry's relatively limited criminal history.  This is particularly true given the nature and circumstances of the time Perry has spent awaiting trial, time during which he has remained responsible and trouble-free.

Moreover, it cannot be seriously argued that, given the conduct here in conjunction with Perry's circumstances and efforts to live a responsible life, a sentence of 63 months is

more than enough to promote respect for the law, both
specifically as to Perry and generally as to the public at large.
Notwithstanding his facially serious record of convictions, has
served time only twice, and once at for the minimum sentence
allowable (one year) at a state prison and the other more recent
time at Suffolk County House of Correction facility.  The
proposed sentence will keep him incarcerated for at least another
four and one-half years in federal prison as a result of the
impulsive decisions to find a gun and threaten Alcindor.  The
public's right to just punishment for the offense is vindicated
by Perry's conviction and punishment by a such a significant
sentence.

**(B)   to afford adequate deterrence to criminal conduct**

Perry's efforts to build and maintain a productive, crime-
free lifestyle have been wrecked by his decision to find a gun
and confront Alcindor.  Similarly, the lives of his close family
- most notably his mother, who has struggled to protect Perry
from life on the streets - have been thrown into turmoil.  There
can be little doubt that the sentencing and incarceration he will
endure provide overwhelming deterrence to any thought of relapse
in the future.

**(C)   to protect the public from further crimes of the
defendant**

Admittedly, Perry's record, at first blush, appears serious enough to the conduct at issue to raise public protection concerns.  A close reading of Perry's record, however, and its connection to the public housing milieu in which Perry was raised and lived, provides some mitigation as to the outwardly serious nature of his criminal record.  Nearly all of the conduct underlying the past offenses, for instance, arises from very small scale possession and sale of cocaine.  Notably, Perry's record is bereft of assaultive or firearms-related crimes. Moreover, Perry's record reveals that he has been remarkably compliant with the supervision component of any sentence received; the record contains no probation violations or defaults.

**3.    The Sentencing Range Established by the Sentencing Commission**

The Presentence Report calculates Perry's sentencing guideline range to be 84-108 months based in part on the purported seriousness of his criminal record.  The criminal history categories in the sentencing table evidence the sentencing commission's concern with recidivism and public protection.  It follows then, that if a defendant's criminal history contains crimes that result in a higher criminal history category but examination of the circumstances surrounding those convictions reveals that the convictions are relatively minor and

violence-free, that the weight of the advisory guideline, in the context of the other statutory directives, is significantly weakened.  As noted above, Perry contends that there is reliable information about Perry's criminal history to indicate that it renders his an unusual case and one in which a statutory, rather than guidelines sentence, is warranted.  Cf. United States v. Summers, 893 F.2d 63, 67 (4th Cir. 1990)(in mandatory guidelines context, overstatement of a defendant's criminal history category as a circumstance that may warrant departure has been expressly identified by the Sentencing Commission in §4A1.3 p.s.); United States v. Spencer, 25 F.3d 1105 (D.C. Cir. 1994)(same).

Here, the force of the assumption that past criminal conduct is predictive of recidivism should be accorded little weight; Perry has graphically demonstrated, in the two years he has remained trouble-free while on release, that his desire to end the behavior that winds him up in court is real and concrete.

In these circumstances, the advisory guideline should have minimal weight and, in light of the other statutory directives contained in 18 U.S.C. §3553(a), the Court should sentence Perry to 63 months imprisonment.[1]

_____

[1]The suggested sentence - 63 months - falls at the low end of the advisory guideline sentencing range were Perry in Criminal History Category II.  Defendant submits that Perry's demonstrated low risk of recidivism makes him akin to those defendants who with facially less serious records.  Such a departure was justified - and in Perry's case would have been appropriate -

**CONCLUSION**

For the foregoing reasons, this Court should impose a sentence of 63 months imprisonment with a three-year period of supervised release to follow.  The Court should impose no fine.


                                        ANDREW PERRY
                                        By His Attorney,


                                        /s/ Timothy Watkins
                                        Timothy G. Watkins
                                        Federal Defender Office
                                        408 Atlantic Ave. 3rd Floor
                                        Boston, MA  02110
                                        Tel: 617-223-8061



                        CERTIFICATE OF SERVICE

    I, Timothy G. Watkins, hereby certify that this document
filed through the ECF system will be sent electronically to the
registered participants as identified on the Notice of Electronic
Filing (NEF), is well is on United States Probation Officer
Pamela Lombardini by electronic mail, on July 18, 2006.


                            /s/ Timothy G. Watkins
                            Timothy G. Watkins




_____

even prior to the replacement of the guidelines scheme with the
<u>Booker</u>'s statutory sentencing directive.  <u>See</u> U.S.S.G. § 4A1.3.